NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

STEVEN EUGENE TRACEY, *Appellant*.

L. N., *Crime Victim*.

No. 1 CA-CR 17-0221
FILED 8-21-2018

Appeal from the Superior Court in Yavapai County
No. P1300CR201400619
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele G. Ponce
*Counsel for Appellee*

Craig Williams Attorney at Law PLLC, Prescott Valley
By Craig Williams
*Counsel for Appellant*

Arizona Voice for Crime Victims, Phoenix
By Colleen Clase
*Counsel for Crime Victim*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Peter B. Swann joined.

---

**P E R K I N S**, Judge:

¶1        Steven Eugene Tracey appeals his convictions and sentences for two counts of sexual conduct with a minor, attempted child molestation, continuous sexual abuse of a child, molestation of a child, and furnishing harmful items to a minor. Tracey argues the trial court erred in denying his motion for mistrial and in its evidentiary rulings. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Tracey. *State v. Harm*, 236 Ariz. 402, 404 n.2 (App. 2015). Between 1988 and 1991, Tracey engaged in sexual activities with B.F. and L.N., who were minors. Twenty years later, between 2011 and 2014, he engaged in sexual activities with C.W. and G.W., two minors who at the time were residing with Tracey. In 2015, the State charged Tracey with thirteen counts of various sexual crimes for these activities, including sexual conduct with a minor, continuous sexual abuse of a child, and furnishing harmful items to a minor.

¶3        On the State's motion, the court ultimately dismissed without prejudice all counts relating to B.F. Granting Tracey's motion to sever, the court held two separate trials for the remaining counts: one for the counts involving L.N. and one for the counts involving C.W. and G.W. The jury that considered the charges involving L.N. found Tracey not guilty of one count and guilty of the other count. The jury considering the charges involving C.W. and G.W. found Tracey guilty of the lesser included offense of one of the charged crimes, and guilty of four of the remaining counts as charged. The court acquitted Tracey on the remaining two counts. The court held a sentencing hearing for all convictions and imposed consecutive prison sentences totaling ninety-eight years. Tracey timely appealed.

**DISCUSSION**

## I. Motion for Mistrial

¶4        During L.N.'s direct testimony, the State asked her to identify Tracey. In response, L.N. stood, pointed at Tracey, and stated, "That man was indicted by the grand jury." Tracey immediately objected and the court interjected, ceased the questioning, and excused the jury. Tracey then moved for a mistrial, arguing the outburst "tainted the jury." The court denied both the motion and Tracey's subsequent request to include the audio recording of trial in the record "for appeal or PCR purposes." Upon the jury's return, the court instructed the jurors "to disregard the last question and disregard the last answer." The State then asked L.N. again to identify Tracey, and she did so.

¶5        Without developing any substantive argument, Tracey summarily asserts the court's denial of the mistrial motion prejudiced him. We review for an abuse of discretion. *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000). "This deferential standard of review applies because the trial judge is in the best position to evaluate 'the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial.'" *State v. Bible,* 175 Ariz. 549, 598 (1993) (quoting *State v. Koch,* 138 Ariz. 99, 101 (1983)).

¶6        The record does not reveal any prejudice resulting from the court's denial of a mistrial. Before L.N.'s testimony, the court clerk read the indictment aloud, thereby expressly informing the jurors that the grand jury had indicted Tracey on two counts of sexual conduct with a minor. Thus, L.N.'s response did not provide the jurors with substantive information they did not already know. Additionally, the court instructed the jury to disregard L.N.'s response to the State's request to identify Tracey. We presume that the jury followed the court's admonition. *State v. Herrera,* 174 Ariz. 387, 395 (1993). The court did not abuse its discretion by denying the mistrial motion.

## II. Recording of Trial

¶7        After the verdicts in the trial for the counts involving L.N., Tracey repeated his request to make the audio recording a part of the official record. Tracey argued the recording was necessary for appellate purposes to illustrate the "volume, tenor, and tone . . . [of] the victim's misconduct." Finding L.N.'s response was not "as dramatic as [Tracey] described in [his] motion," the court denied Tracey's request. The court

explained that the clerk of the court uses recordings to assist in preparing minute entries, and court reporter transcripts constitute the official record of criminal court proceedings. The court additionally stated that it was hesitant to order the clerk to provide copies of the recording because doing so could "open the door to challenges to the quality and/or sufficiency of the Court Reporter's transcripts" and become a common practice in criminal cases. Finally, the court observed that the recording system in the courtroom where trial took place "does not always work correctly, making it unreliable."

¶8        Tracey argues the trial court erred in failing to include the audio recording of L.N.'s "outburst" in the record because he contends the recording is necessary "to show the severity of the outburst." However, Tracey provides no authority supporting his argument that he was entitled to have the recording made a part of the record. As the trial court correctly noted, the court reporters' certified transcripts comprise the official record of the trial proceedings. Ariz. R. Crim. P. 31.8(a)(1)(D), (b). And the recording is not necessary to review the trial court's decision. The parties sufficiently described L.N.'s reaction. Significantly, the trial judge personally observed the effect L.N.'s response had on the jury and subsequently found the curative instruction mitigated any possible prejudice. When Tracey moved for a mistrial, he stated nothing on the record that contradicts the court's conclusion. The court did not err.

## III.    Photograph of L.N.

¶9        Before the trial for the counts involving L.N. commenced, the State moved to admit a photograph of L.N. taken during the time period the alleged offenses occurred, approximately twenty-five years before trial. The State also requested preclusion of any photograph depicting Tracey at the time. In response, Tracey argued a photograph of himself at the time of the alleged offense should be admitted to "reduce any prejudicial value" of presenting the jury with a photograph only of the then 12-year-old victim. According to Tracey, "looking at [the photograph of L.N.] and looking at the 42-year-old Steven Tracey sitting at [the defense] table . . . has a severe tendency to inflame the passions of the jury." The court granted the State's motion.

¶10        Without developing an argument that applies legal authority, Tracey summarily asserts that the court erred in finding L.N.'s photograph admissible and precluding his photograph. We disagree. One of Tracey's noticed defenses was mistake of fact, which presumably referred to an argument that Tracey did not know L.N. was a minor at the time of the

4

offense. The photograph of L.N. was properly admissible to assist the jury in evaluating the reasonableness of such a purported mistake. Additionally, contrary to Tracey's assertion, the court's ruling was not unfairly prejudicial under Arizona Rule of Evidence 403. As the trial court noted, the jury would know, without Tracey's photograph, that he was approximately twenty-five years younger at the time of the offense than he was at trial. For these reasons, the court did not abuse its discretion.

## IV.    Third-Party Culpability Evidence

¶11    Before the trial for the counts involving C.W. and G.W., Tracey filed a motion seeking to admit evidence that the brothers of C.W. and G.W. sexually abused them. According to Tracey, this evidence would establish the brothers' culpability for the offenses Tracey allegedly committed. Tracey also argued the brothers' sexual abuse of the victims motivated the victims to fabricate the allegations against him because the reported abuse resulted in the victims being placed in protective services and "away from . . . the continuous sexual abuse they suffered at the hands of their brothers." The court conducted an evidentiary hearing on the motion before denying Tracey's request.

¶12    On appeal, Tracey argues the court erred in denying his proposed use of the third-party evidence that related to only one of the brother's sexual abuse of the victims. Tracey contends the evidence sufficiently created a reasonable doubt that he committed the charged offenses, and he argues he satisfied his statutory burden to show the evidence supports a claim that the victims had a motive to accuse him. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1421(A)(3) (2018) (Arizona's rape shield law). We disagree.

¶13    "The admissibility of third party culpability evidence is reviewed under an abuse of discretion standard." *State v. Prion*, 203 Ariz. 157, 161, ¶ 21 (2002). A defendant may "attempt to show that another person committed the crime for which he is charged, but it remains in the trial court's discretion to exclude the evidence if it offers only a possible ground of suspicion against another." *Id.* (internal citation omitted).

¶14    Arizona Rules of Evidence 401, 402, and 403 "set forth the proper test for determining the admissibility of third-party culpability evidence." *State v. Gibson*, 202 Ariz. 321, 324, ¶ 19 (2002). "The proper focus in determining relevancy is the effect the evidence has upon the *defendant's* culpability. To be relevant, the evidence need only *tend* to create a reasonable doubt as to the defendant's guilt." *Id.* at 324, ¶ 16. However,

evidence of "trivial probative value" or evidence raising only "vague grounds of suspicion" is properly excluded. *State v. Bigger*, 227 Ariz. 196, 209, ¶ 43 (App. 2011).

¶15     Arizona's rape shield law provides, in relevant part:

> Evidence of specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence, and if the evidence . . . supports a claim that the victim has a motive in accusing the defendant of the crime.

A.R.S. § 13-1421(A)(3). Prior sexual abuse of a victim is considered to be "prior sexual conduct" under the statute. *See State v. Dixon*, 226 Ariz. 545, 554, ¶ 47 (2011) (sexual assault is prior sexual conduct under Arizona's rape shield law). The proponent of evidence of a victim's prior sexual conduct bears the burden of proving by clear and convincing evidence that "the evidence is relevant and is material to a fact in issue in the case." *State ex rel. Montgomery v. Padilla*, 238 Ariz. 560, 564, ¶ 13 (App. 2015) (internal quotation marks omitted).

¶16     Here, evidence that the brother sexually abused the victims was not relevant to determining whether Tracey had also done so. The record reflects that the sexual abuse the brother engaged in was of a different nature than the sexual acts Tracey allegedly committed. Additionally, the record does not support Tracey's assertion that the evidence of the brother's sexual abuse of the victims motivated them to accuse Tracey so that they would be placed in protective services and separated from their brother. Tracey presented no evidence at the pre-trial hearing establishing the victims knew that, as a result of accusing Tracey, they would be separated from their brother or that they and not Tracey would be removed from their home.

¶17     Apparently for the first time, Tracey cursorily argues preclusion of the evidence violated his right to confront witnesses. We reject Tracey's argument. This court has previously determined that application of the rape shield law to preclude evidence does not unconstitutionally infringe on this right. *State v. Herrera*, 232 Ariz. 536, 550, ¶ 42 (App. 2013); *State v. Gilfillan*, 196 Ariz. 396, 403, ¶¶ 22–23 (App. 2000), *abrogated on other grounds by State v. Carson*, 243 Ariz. 463, 466, ¶ 10 (2018).

¶18         At most, evidence of the brother's sexual abuse of the victims raised "vague grounds of suspicion." *Bigger*, 227 Ariz. at 209, ¶ 43. Accordingly, the evidence was properly precluded and the court acted within its discretion in denying Tracey's motion.

## V.        "Profiling" Evidence

¶19         During the trial for the charges involving C.W. and G.W., and over Tracey's objection, the trial court allowed the State to provide the testimony of Cynthia Schopen, a forensic interviewer who described for the jury the general behavioral characteristics of children who are sexually abused. Specifically, Schopen described the various responses such victims have to the abuse and why they may delay disclosing it. Schopen testified as a "blind" expert; that is, she had no knowledge regarding the specific victims in this case or the circumstances of the allegations against Tracey.

¶20         Tracey argues Schopen's testimony was improper "profile" evidence that described the characteristics of those who sexually abuse children. We reject this argument.

¶21         In the drug crime context, our supreme court has described drug courier profile evidence as an "informal," "abstract," and "loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity." *State v. Lee*, 191 Ariz. 542, 544, ¶ 10 (1998). Profile evidence creates a risk that a jury will convict a defendant "not for what he did but for what others are doing." *Id.* at 545, ¶ 12 (quoting *State v. Cifuentes*, 171 Ariz. 257, 257 (App. 1991)).

¶22         Schopen did not describe characteristics of sexual abusers. As noted, she described typical behaviors of sexual abuse victims, which helped the jury understand the victims' inconsistent testimony regarding when events occurred and their delayed reporting of the abuse. *See State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 15 (2014) ("[E]xpert testimony about general behavior patterns of child sexual abuse victims may help the jury understand the evidence."). Schopen's testimony was not improper profile evidence. The court, therefore, did not abuse its discretion in admitting it.

## CONCLUSION

¶23       Tracey's convictions and resulting sentences are affirmed.

